UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATHANIEL JACKSON,

                                        Plaintiff,

                                                            9:96-CV-1864
                        v.                                  (GLS)(GJD)

K. PROVOST,

                                        Defendant.

---

NATHANIEL JACKSON,
Plaintiff *pro se*
86-A-4227
Great Meadow Correctional Facility
PO BOX 51
Comstock, New York 12821

HON. ANDREW M. CUOMO              ADELE M. TAYLOR-SCOTT
Attorney General State of New York    Assistant Attorney General
Department of Law
The Capitol
Albany, New York 12224

Gary L. Sharpe
United States District Judge

## DECISION AND ORDER

Presently before the court[1] is defendant Kevin Provost's motion for

summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 109).  Plaintiff

initially requested an extension of time to file a response to the motion, but

instead has filed a motion for appointment of counsel. (Dkt. Nos. 112, 113).

---

[1] The parties are advised that the referral to the Magistrate Judge as provided for under Local Rule NDNY 72.3 has been rescinded for purposes of this motion.

For the following reasons, this court will deny plaintiff's motion for appointment of counsel and grant defendant's motion for summary judgment.

## DISCUSSION

### 1.   Background

This case has an unfortunate and tortured background, beginning with the filing of plaintiff's original complaint in 1996.  Th essence of this case is plaintiff's claim that someone violated his constitutional right to access to courts when that person damaged or destroyed legal materials sent to plaintiff through the mail.  The documents were later returned to the sender in "damaged" condition.[2]  In a Report-Recommendation, dated October 24, 2005, Magistrate Judge Gustave J. Di Bianco outlined the procedural path that this case had taken from the beginning. (Dkt. No. 88).[3]

Without repeating all of the facts, this court notes that on March 15, 2000, the Honorable Lawrence E. Kahn granted summary judgment in favor of then-defendants Burke and R. Provost, dismissing the case in its

---

[2] It is actually unclear whether the documents were "damaged" or "destroyed" and to what extent.  As stated below, plaintiff states that he never actually saw the documents, and at the time of his deposition, he no longer had the pictures that he alleged his family sent him of the documents. The terms "damaged" and "destroyed" are used throughout the papers.

[3] The Report-Recommendation was adopted by this court on November 18, 2005. (Dkt. No. 89).

entirety. (Dkt. No. 43).  Defendant Burke won dismissal based upon the

ground that, as a supervisory official, he was not personally involved in the

mail incident, and plaintiff's claims regarding an insufficient investigation of

the incident did not state a claim.  Defendant R. Provost argued that he

was not the individual who signed the return receipt for plaintiff's mail and

could not have been involved in the incident of which plaintiff complained.

On August 24, 2001, the Second Circuit affirmed the dismissal as

against defendant Burke, but vacated Judge Kahn's order and remanded

case so that plaintiff could have an opportunity to engage in discovery to

identify the person who signed the return receipt for plaintiff's package and

under what circumstances it was signed. (Dkt. No. 47).  The Second Circuit

also directed that plaintiff be afforded an opportunity to amend his

complaint against the person ultimately identified. *Id.*

Through discovery, plaintiff obtained documents appearing to show

that the person who signed the return receipt was in reality "K. Provost."

(Dkt. No. 54, Exs. A-C).  Plaintiff amended his complaint to allege his

denial of access to courts claim against "K." Provost, and the court

accepted the amended complaint for filing on July 16, 2002. (Dkt. Nos. 55,

57).  The United States Marshal was directed to effect service of process

on the new defendant. (Dkt. No. 57).

On April 1, 2004, service of the summons and the amended complaint was acknowledged by "K. Provost." (Dkt. No. 71).  An answer to the amended complaint was filed in May of 2004, in which the defendant stated that his name was "Keith Provost." (Dkt. No. 72).  Plaintiff was deposed on November 30, 2004. (Dkt. No. 82, Exs.).  On March 30, 2005, defendant Keith Provost filed a motion for summary judgment, stating that he was not the individual who signed the return receipt for plaintiff's mail in 1994, that he was not in any way involved in the incident of which plaintiff complained, and that he was not the proper defendant.

In support of the motion, Keith Provost submitted employment records showing that he could not have been involved in the alleged mail incident, because on the day that the return receipt was signed, Keith Provost was working at Franklin Correctional Facility, not at Clinton Correctional Facility where plaintiff was incarcerated. (Dkt. No. 82, Decl. of Keith Provost).

Although realizing that once again, the incorrect defendant had been served, Magistrate Judge Di Bianco recommended denying the summary judgment motion without prejudice, because although neither of the

4

defendants were ever assigned to the law library at Clinton Correctional

Facility, the Second Circuit stated that the case had to remain pending

against the "current" defendant in order to afford plaintiff a full and

complete opportunity to identify and find the intended defendant.

Magistrate Judge Di Bianco also appointed the law firm of Mackenzie

Hughes for the limited purpose of assisting plaintiff in conducting additional

discovery and ensuring service upon the proper defendant. (Dkt. No. 89 at

7).  Finally, on May 17, 2007, the summons and amended complaint were

served on "Kevin Provost." (Dkt. No. 103).  Kevin Provost answered the

amended complaint on May 22, 2007. (Dkt. No. 104).

On July 3, 2007, plaintiff requested that he be able to engage in

discovery against the new defendant "with the possibility of amending [his]

complaint," and Magistrate Judge Di Bianco ordered the parties to advise

the court in writing, no later than September 15, 2007, whether they sought

further discovery and if so, what that discovery would be,[4] staying all

proceedings pending further order. (Dkt. No. 106).  It does not appear that

either party requested further discovery by the court's deadline.  On

November 28, 2007, Magistrate Judge Di Bianco ordered discovery closed,

---

[4] The order stated that if the parties sought further discovery, they should submit a copy of the proposed discovery request(s) to the court. (Dkt. No. 106 at 2).

lifted the stay, and set a deadline for dispositive motions of January 31,

2008. (Dkt. No. 107).  Defendant's motion for summary judgment was filed

on January 31, 2008. (Dkt. No. 109).

## 2.    <u>Motion for Appointment of Counsel</u>

The court will first consider plaintiff's motion for appointment of

counsel. (Dkt. No. 113).  Plaintiff's application for counsel indicates that

plaintiff has been unsuccessful in his efforts to obtain pro bono counsel on

his own.  Thus, this Court may properly consider the present request.

Courts cannot utilize a bright-line test in determining whether counsel

should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*,

114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be

carefully considered by the court in ruling upon such a motion.  As a

threshold matter, the court should ascertain whether the indigent's claims

seem likely to be of substance.  If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross examination will be
> the major proof presented to the fact finder, the indigent's ability to
> present the case, the complexity of the legal issues and any special
> reason in that case why appointment of counsel would be more likely
> to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)

(quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  This is

not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995)(McAvoy, C.J.)(citing *Hodge,* 802 F.2d at 61).

On July 7, 2004, Magistrate Judge Di Bianco analyzed the above factors and denied plaintiff's motion for appointment of counsel without prejudice. (Dkt. No. 74).  Magistrate Judge Di Bianco later assigned counsel in this case for the limited purpose of assisting plaintiff to identify and serve the individual that signed the return receipt for plaintiff's mail. (Dkt. No. 88). The limited assignment was terminated after counsel completed the purpose of the assignment. (Dkt. No. 102).  After reviewing the entire file, this court finds that appointment of counsel at this time is not warranted under the *Hodge* standard, appointment of counsel is denied, and the court will proceed to consider defendant's motion for summary judgment.

**3.    <u>Facts</u>**

For clarity, this court will briefly review the facts of this case.  In the amended complaint, plaintiff alleges that on June 23, 1994, his mother sent him a package of legal materials, consisting of trial transcripts, pre-trial

motion papers, an appellate brief, and post-trial motion papers. Amended

Complaint (AC) at ¶ 6.  (Dkt. No. 56).  Plaintiff alleges that he needed these

documents in order to pursue a motion to vacate his conviction under New

York law as well as a petition for federal habeas corpus. *Id.*

Plaintiff claims that on June 27, 1994, "K. Provost" signed for

plaintiff's legal mail and without notifying plaintiff, "destroy [sic] its contents

and re-mail them [sic] back to my mother in a different envelope." *Id.*

Plaintiff claims that because of this conduct by defendant, plaintiff was

unable to attempt to overturn his conviction in State court and is now

prevented from filing a petition for habeas corpus in federal court due to

"untimeliness." *Id.*  Plaintiff claims that defendant's actions denied plaintiff

due process, equal protection, and access to courts. *Id.* ¶ 7.  Plaintiff seeks

declaratory, injunctive, and substantial monetary relief. *Id.* ¶ 9.

Plaintiff was deposed on November 30, 2004.  A transcript of that

deposition was included with defendant's prior motion for summary

judgment. (Dkt. No. 82)(Deposition Transcript (T)).  At his deposition,

plaintiff testified that the documents were returned to his mother sometime

between June 23, 1994 and July 1, 1994. (T. 86).  Plaintiff stated that his

mother told him that the "pictures" were torn and had ink or chemicals all

8

over them. *Id.*  Plaintiff did not actually see the documents, but stated that he saw "pictures" of them. *Id.*

At the deposition, plaintiff also testified that he believed that the proper defendant was an individual named "Provost" with whom he had "words" and who worked in the law library. (T. 104-105).  Plaintiff assumed when he saw the signature on the return receipt, that it was the same Provost with whom he had argued and would, thus, have had a motive to "single out" plaintiff's legal documents. (T. 105-107).  Plaintiff testified that he amended his complaint to name "K. Provost" based upon the discovery that he obtained after the Second Circuit remanded the case. (T. 114-15).

4.    **Due Process and Equal Protection**

Although plaintiff has included procedural due process and equal protection claims in his amended complaint, the court notes that the Second Circuit expressly affirmed the dismissal of plaintiff's due process and equal protection claims. *Jackson v. Burke*, 256 F.3d 93, 96-97 (2d Cir. 2001).  Under the "law of the case" doctrine, when a court "decides a rule of law, that decision continues to govern in subsequent stages of the same case." *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996).

9

Although the "law of the case" doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment,[5] in this case the Second Circuit has already affirmed the dismissal of plaintiff's due process and equal protections claims.  There is no reason to revisit those issues because the only difference between the prior complaint and the amended complaint is the identity of the defendant.  Plaintiff cannot revive claims that the Second Circuit has dismissed.  Thus, the only remaining issue is plaintiff's claim that he was denied access to courts.

## 5.    Defendant "Keith" Provost

The court denied defendant Keith Provost's motion for summary judgment without prejudice, even though defendant produced evidence that he could not have been involved in the alleged violation because at the time of the incident of which plaintiff complains, Keith Provost was assigned to Franklin Correctional Facility. (Dkt. No. 88 at 4-7)(Report-Recommendation).  Defendant Keith Provost was the only remaining defendant, and the reason that the court maintained defendant Keith Provost as a defendant at that time was so that plaintiff could be afforded

---

[5] *See Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001)(citations omitted).

10

"full and complete discovery regarding the identity and whereabouts of the intended defendant." *Id.* at 7.

However, now that plaintiff has identified and served the defendant who signed the return receipt, there is no reason to maintain Keith Provost as a defendant since it is clear that Keith Provost was ***not*** assigned to Clinton Correctional Facility until November 18, 1998, more than four years ***after*** the incident with plaintiff's mail took place. Keith Provost Aff. ¶¶ 8-9 & Ex. A.  Thus, the amended complaint must be dismissed with prejudice to the extent that Keith Provost has been made a defendant.[6]

## 6. **Defendant "Kevin" Provost**

The newest defendant Provost that has been served in this action is "Kevin" Provost.  Defendant Provost has submitted an affidavit in support of the motion for summary judgment.  In his affidavit, defendant Provost states that in June of 1994, he was a Civilian Motor Vehicle Operator for the Department of Corrections (DOCS), assigned to the garage at Clinton Correctional Facility. Kevin Provost Aff. ¶ 4 (Dkt. No. 109).  One of his responsibilities was to pick up prisoner mail from the United States Post

---

[6] The court notes that the caption of the complaint names only "K. Provost" as a defendant in this case.  However, ***Keith*** Provost was served and filed the motion for summary judgment that the court denied without prejudice on November 18, 2005 when the court adopted Magistrate Judge Di Bianco's October 24, 2005 report-recommendation.

Office in Dannemora, New York and deliver it to the correctional facility. *Id.* ¶ 6.

Defendant Provost was likely the individual who signed the receipt for plaintiff's legal mail on June 27, 2004.  The Post Office personnel in Dannemora put all the mail that was destined for the correctional facility on a long table, with boxed mail in one pile and "enveloped" mail on a plastic tray. *Id.* ¶ 8.  The receipts that had to be signed were "already detached from the mail, and placed in a pile" for defendant Provost to sign. *Id.* at ¶ 9. Defendant Provost states that he signed all the receipts at once and returned them to the postal employees. *Id.* ¶ 10.  He has no independent recollection of signing a receipt for plaintiff's mail. *Id.* ¶ 11.

In his affidavit, defendant Provost outlines the procedure that he used to deliver the mail to Clinton Correctional Facility. *Id.* ¶¶ 12-17.  After signing the receipts in bulk, defendant Provost loaded the mail onto his truck and drove back to the correctional facility. *Id.* ¶ 12.  When he arrived at the facility, defendant's first stop was the loading dock of the Package Room, where corrections officers assisted defendant Provost in removing the boxed mail from the truck. *Id.* ¶ 13-14.  The mail contained in envelopes was then taken to the Correspondence Office, located upstairs

in the administration building. *Id.* at ¶ 15.  Inmate porters would assist him in carrying the mail bags upstairs. *Id.* ¶ 16.  The mail bags were given to civilian personnel working in the Correspondence Office. *Id.* ¶ 17.

Defendant Provost states that in the afternoon, the procedure was basically the opposite.  He picked up the mail bags from the Correspondence Office, picked up the boxed mail from the corrections officers at the loading dock of the package room, and then took all the outgoing mail to the Post Office in Dannemora. *Id.* ¶ 19.  Defendant Provost states that he did ***not*** open or sort prisoners' mail, nor did he inspect mail for contraband because he had no authority to do so. *Id.* ¶ 21. He did not make decisions about the ultimate destination of either incoming or outgoing mail. *Id.*

Defendant Provost states that, other than the inmate porters who helped him carry mail bags upstairs to the Correspondence Office, he had "no contact with inmates at the Clinton Correctional Facility." *Id.* ¶ 23. Defendant did not know that plaintiff existed or that he was an inmate at Clinton Correctional Facility until defendant was served with the Summons and Complaint in ***April of 2007***, almost eleven years after the complaint was filed, and almost fourteen years after the incident in question. *Id.* ¶ 24.

13

Finally, the court notes that defendant Provost states that he **retired** from the Department of Corrections in **1998**. *Id.* ¶ 4.

In order to prevail on a section 1983 claim, the law is clear that a defendant must have been acting under color of state law and must have been personally involved in the violation of plaintiff's constitutional or statutory rights. *Blaylock v. Borden*, 06 Civ. 4387, 2008 U.S. Dist. LEXIS 31743, *8 (S.D.N.Y. April 16, 2008)(citing *inter alia* 42 U.S.C. § 1983; *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Generally, the court analyzes personal involvement when it determines whether a supervisory official can be said to have been personally involved in an alleged constitutional violation. *Wright*, 21 F.3d at 501.  In this case, since the defendant was not a supervisory official, personal involvement would mean "direct participation" in the alleged violation. *Id.*

Based on the affidavit of Kevin Provost, it is clear that he did not have any personal involvement in the opening of plaintiff's mail or the alleged destruction of plaintiff's legal materials.  Plaintiff alleged in his deposition that he assumed that the individual who signed the receipt for his legal mail was involved in its destruction because plaintiff had an argument with a corrections officer named Provost who worked in the law library. (T. 104-

14

105, 108-110).  Plaintiff also testified that apart from the conversation with the officer in the law library, there was no other evidence that plaintiff's mail would have been "singled out."[7] (T. 110-11).  Clearly, the current defendant Provost was *never* a corrections officer, *never* worked in the law library, and in fact, *never* knew that this plaintiff existed.  Thus, he could *not* have been the individual with whom plaintiff had an argument in the law library and who plaintiff assumed was the individual who destroyed his papers.

Based on defendant Provost's affidavit, it is now clear that the procedure for signing mail receipts involved signing for the mail in bulk after the receipts had been removed from the packages.  It is also evident that defendant Provost could not have been involved in deciding to return mail to plaintiff's family.  Defendant Provost's *only contact with prisoner mail* was bringing it back and forth from the Post Office in Dannemora to Clinton Correctional Facility.  With this information, it is clear that plaintiff's assumption is merely conclusory and completely unsupported by the evidence. Thus, there is absolutely no evidence that defendant Provost had personal involvement in plaintiff's alleged violation.

----

[7] At the time, plaintiff was being asked about a possible equal protection violation, and defense counsel was using the words "singled out," however, the facts apply to plaintiff's remaining cause of action and to whether defendant Provost had any personal involvement in plaintiff's claim.

**7.   Access to Courts**

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The Supreme Court has also held that an inmate alleging a denial of access to courts must show actual injury as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996).  The cause of the injury must be inadequacy of the access. *Id.* at 351.  Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v. Casey*, 518 U.S. at 353).  It has also been held that a plaintiff alleging interference with his access to courts "must have been without the opportunity to overcome the impediment before suffering the actual injury." *Odom v. Baker*, 02-CV-757, 2008 U.S. Dist. LEXIS 7704, *14-15 (W.D.N.Y. Jan. 31, 2008)(citing *Howard v. Leonardo*, 845 F. Supp. 2d 943, 947 (N.D.N.Y. 1994)).

In this case, plaintiff claims that due to the destruction of his legal papers he was unable to file a second motion to vacate his conviction in

New York State court and was unable to file a timely petition for habeas corpus in federal court.  However, plaintiff testified at his deposition that he knew about the damage to his legal materials less than two weeks after the incident because the allegedly destroyed legal materials were sent back to plaintiff's mother.  At his deposition, plaintiff stated that former defendant Deputy Burke came to plaintiff's cell on July 1, 1994 and told plaintiff that the legal documents had been damaged or destroyed. (T. 31-32, 43).

When asked how the documents were "destroyed," plaintiff stated his mother told him that the pictures were torn and had ink and "chemicals" on them. (T. 86).  Although plaintiff stated that his mother had sent him "pictures" of the damaged documents, plaintiff stated that those pictures were confiscated with some other legal materials at Shawangunk Correctional Facility. (T. 88).  Plaintiff apparently no longer had the pictures.

The court notes that in support of a prior motion for summary judgment in this case, former defendant Deputy Superintendent (DS) Burke submitted an affidavit stating that he had spoken to plaintiff's **aunt**, who had sent the package of documents and to whom the package had been returned. Burke Aff. ¶ 5 (Dkt. No. 38, Ex. B).  DS Burke stated that

17

plaintiff's aunt told DS Burke that the documents had been "damaged." *Id.*
DS Burke states that he later spoke to plaintiff, who stated that he believed
that an officer named Otranto was "behind this incident." *Id.* ¶ 6.

DS Burke included all the documents obtained as the result of his
investigation of the matter, including a letter sent to a Ms. Mary Jackson
from the facility Inmate Records Coordinator. Burke Aff. Exs. 6-10.  DS
Burke's memorandum to Superintendent Daniel Senkowski also states that
plaintiff's aunt advised DS Burke that the documents were in a "damaged
condition; missing pages, etc." *Id.* Ex. 6.  He did not use the word
"destroyed."  In fact, a copy of a letter that was sent by a Ms. Walker to
Deputy  Superintendent Burke, in which she clearly states that the
documents were "damaged." *Id.* Ex. 7.

Finally, the court notes that DS Burke's exhibits also contain a letter,
dated June 28, 1994 from the Inmate Records Coordinator to Ms. Mary
Jackson, indicating that the package was being sent back to her because
the correspondence contained "mail from another inmate who has not been
approved to correspond with the above-named inmate." *Id.* Ex. 9.  In a
handwritten note written by DS Burke, he speculated that there may have
been a misunderstanding if the "other inmate" was a co-defendant whose

18

name appeared on plaintiff's papers. *Id.* ¶ 11 & Ex. 10.  The note also indicated that "no damage" was noted. *Id.*

As an "actual injury," plaintiff claims that due to the "destruction"[8] of his legal documents, he could not file a ***second*** motion to vacate his conviction in New York State court pursuant to N.Y. Crim. Proc. Law § 440.10.  Plaintiff testified, however, that he had filed a motion to vacate his conviction in June of 1994, just ***prior*** to the documents being destroyed. (T. 116).  Plaintiff stated that he raised "insufficient counsel . . . and some other issues" that he could not recall. (T. 117).  That motion was ultimately denied. *Id.*

Defense counsel then asked plaintiff whether he would be allowed to bring another section 440.10 motion based on newly discovered evidence. (T. 118).  Plaintiff then stated that he had "newly discovered evidence" in the destroyed legal materials that he was going to use to bring a second section 440.10 motion. (T. 118).  At first, plaintiff could not remember "what among those papers . . . was the newly discovered evidence [.]" (T. 118, 120).  Plaintiff states that he did not mention the "newly discovered

---

[8] As stated above, it is not clear whether the documents were "destroyed" or merely damaged," or the extent of any damage.  The court will assume for purposes of this motion that the documents were "destroyed."

evidence" in his original complaint because the inmate law clerks told him not to mention it. (T. 120-21).

Plaintiff stated that his mother had hired an investigator who obtained the newly discovered evidence. (T. 123).  Plaintiff stated that the investigator wrote a report, and that the report had been included in the papers that plaintiff's mother sent on June 23, 1994. (T. 124).  Plaintiff assumed that the investigator's report was in the documents because plaintiff had "asked for all [his] legal material." *Id.*  Plaintiff stated that he did not get another copy of the report from the private investigator because the investigator wanted more money. (T. 125).

First, there is no indication that a "second" section 440.10 motion would have been meritorious, and plaintiff states that he filed a section 440.10 motion just before his papers were destroyed.  It would seem that if a private investigator had been hired and had found "newly discovered evidence," this would have been included in the prior section 440.10 motion.  In any event, plaintiff never mentioned that there was a report containing "newly discovered evidence" until his deposition.  It also appears from plaintiff's own testimony that it was not the destruction of the alleged document that prevented him from using that evidence.  Rather, it was his

mother's failure to obtain a copy of the report from the investigator.  As stated above, the "actual injury" must result from the defendant's actions, not from actions of others involved with plaintiff's legal papers.

Plaintiff also alleges that he was actually injured because he was unable to file a timely federal habeas petition.  Since this incident allegedly occurred in **June of 1994**, plaintiff would have had time to file a federal habeas petition.  The statute of limitations for federal habeas petitions[9] was not instituted by the Anti-Terrorism and Effective Death Penalty Act (AEDPA) until the act became effective on **April 24, 1996**, almost **two years after** the incident with plaintiff's papers.  Petitioners whose convictions became final prior to the effective date of the statute had a one year grace period from the effective date of the statute within which to file their federal petitions for habeas corpus. *Ross v. Artuz*, 150 F.2d 97, 101-103 (2d Cir. 1998).  Thus, even without statutory[10] or equitable tolling,[11] plaintiff would have had until April 24, 1997 to file a petition for

---

[9] 28 U.S.C. § 2244(d)(1).

[10] The AEDPA provides that the statute of limitations is tolled while a properly filed application for post-conviction relief is pending. 28 U.S.C. § 2244(d)(2).

[11] Although the AEDPA does not provide that the statute of limitations may be tolled for any reasons other than the pendency of a state post-conviction motion, in "rare and exceptional circumstances," the court may equitably toll the limitations period. *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004).  The court notes that there are other dates from which the limitations period may start running.  Those include the date on which an unconstitutional, state-created impediment to

21

habeas corpus.

Thus, plaintiff cannot show that he suffered actual injury as a direct result of this or any defendant's actions.  Plaintiff had plenty of time to attempt to either contact the courts, the private investigator or his trial counsel in an attempt to obtain replacement papers.  Plaintiff's conclusory allegations that he was prevented from filing a meritorious **second** section 440.10 motion, when his first section 440.10 motion had only been recently filed, and was later somehow "prevented" from filing a meritorious petition for habeas corpus are simply too speculative[12] to constitute "actual injury" for purposes of denial of access to courts.

Because plaintiff cannot prove actual injury, any claim for denial of access to courts must be dismissed regardless of the identity of the defendant.

**8.    Defendant's Additional Arguments**

**A.  Exhaustion of Administrative Remedies**

_____

filing a habeas is removed, the date on which the constitutional right on which petitioner bases his habeas application was initially recognized by the Supreme Court if the right was newly recognized and made retroactively applicable, and the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B), (C), and (D).

[12] At the deposition, plaintiff could not even tell defense counsel what the "newly discovered" evidence was or what the private investigator's report contained.  Since plaintiff did not even know what the "newly discovered" evidence was, it would be impossible to show that a motion to vacate based on this allege "new evidence" would have been meritorious.

Defendant also argues that plaintiff failed to exhaust his administrative remedies regarding this claim.  Under the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), plaintiff must exhaust his administrative remedies.  The PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).

The PLRA exhaustion requirement took effect on April 26, 1996 and would apply to this action, filed on November 25, 1996. (Dkt. No. 1). Exhaustion is an affirmative defense that must be raised by defendants, it is the defendants' burden to show that plaintiff has failed to exhaust. *Jones v. Bock*, 127 S. Ct. 910, 921 (2007)(exhaustion not a jurisdictional prerequisite); *Giano v. Goord*, 380 F.3d at 675-76 (some exceptions apply). While the Supreme Court has stated that the PLRA requires "proper exhaustion" of  administrative remedies, it has also been held that some exceptions to the exhaustion requirement still apply. *See Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)("proper exhaustion" required); *Smart v. Goord*, 04 Civ. 8850, 2008 U.S. Dist. LEXIS 16053, *4-6 (S.D.N.Y. March 3, 2008)(discussing whether administrative remedies were "available" to the

plaintiff).

Although plaintiff does admit that he never filed a grievance regarding this issue, it is clear that Deputy Superintendent Burke conducted an investigation of the matter, writing back to both the plaintiff's family as well as a New York State Senator who had become involved in the claim. Burke Aff. & Exhibits (Dkt. No. 35)(previous summary judgment motion). Deputy Superintendent Burke stated that he was unable to complete his investigation because plaintiff was transferred to another facility. Burke Aff. ¶ 12.  He wrote a letter to plaintiff's aunt stating that any further "business" regarding the matter would have to be pursued through plaintiff's new facility's Administration. *Id.* & Ex. 11.

It does not appear that plaintiff continued the attempt to investigate the damage of his documents after he was transferred to the new facility. Thus, even if an exception to the exhaustion requirement would have applied based on the investigation begun by DS Burke, plaintiff did not comply with DS Burke's direction to bring any further claims to the officials at plaintiff's new facility.  It is, thus, arguable that plaintiff did not "properly" exhaust his administrative remedies, and that this would be an alternative basis for dismissal.

### B.  Statute of Limitations

Defendant also argues that the statute of limitations has run for any claims against him.  Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). See N.Y. CIV. PRAC. L & R. § 214(5).  Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

The claim in this action accrued in 1994 when plaintiff's papers were allegedly damaged or destroyed.  Plaintiff's original complaint, filed in 1996 was timely.  However, now in 2008, the three year statute of limitations has clearly run.  The question becomes whether the addition of new defendant Kevin Provost can relate back to the date of the original complaint.

Rule 15(c) of the Federal Rules of Civil Procedure provides that when a new party is brought into an action, the claim will relate back if the amendment asserts a claim that arises out of the conduct set out in the original pleading ***and*** if the new party has "received such notice of the

25

institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. FED. R. CIV. P. 15(c)(1)(B), 15(c)(1)(C)(i) & (C)(ii).

In this case, although plaintiff has not changed the claim and would thus, meet the requirements of Rule 15(c)(1)(B), he **cannot** meet the requirements of Rule 15(c)(1)(C) with respect to new defendant Kevin Provost.  Since Kevin Provost never met plaintiff, and he was clearly not the individual with whom plaintiff had an argument in the law library, there is no way that Kevin Provost would have been aware of the claims in this law suit.  Additionally, since Kevin Provost retired from DOCS in 1998, there is even less of a chance that he would have been aware of plaintiff, his lawsuit, or his trouble in finding the proper defendant.

Although some of the difficulty in locating a defendant was not the plaintiff's fault, it appears clear that the plaintiff's assumption that the individual who signed for the package was the same individual who damaged his papers was unfounded.  Although there are circumstances where knowledge may be imputed to a defendant or defendants because

26

they have the same attorneys, there must be some showing that the

attorney or attorneys knew that the new defendant would be added to the

existing suit. *Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989);

*Colombo v. S.C. Dep't of Soc. Servcs.*, 221 F.R.D. 374, 377 (E.D.N.Y.

2004).

In this case, plaintiff initially identified an "R. Provost" and plaintiff

alleged that the individual responsible for the alleged damage was an

individual who worked in the law library and with whom plaintiff had a

disagreement.  Plaintiff focused on the name "Provost" because of the

signed return receipt for his mail, however, plaintiff believed that the first

initial of defendant's name was "R".  The second defendant "Keith Provost"

was added after plaintiff determined that the first initial of the name on the

receipt was "K."  The "K" Provost who was a corrections officer was added,

however, it was later determined that Keith Provost did not work at the

facility until after the incident occurred.

Based upon the facts of plaintiff's complaint, it would have been

difficult for defense counsel to assume that an individual who would have

had no contact with plaintiff, but instead drove a mail truck between the

Post Office and the correctional facility would have been the individual

responsible for plaintiff's claim and would have been added as a defendant,
given the fact that Kevin Provost had retired from DOCS by the time that
attention centered upon his identity in 2002.  Thus, the addition of this
defendant would not relate back to the original complaint.  Although it is not
necessary to this court's decision, the running of the statute of limitations
would be another basis for dismissal of this action as against Kevin
Provost.

     **WHEREFORE**, based on the findings above, it is

     **ORDERED**, that plaintiff's motion for appointment of counsel (Dkt.
No. 113) is **DENIED**, and it is further

     **ORDERED**, that defendant Kevin Provost's motion for summary
judgment (Dkt. No. 109) is **GRANTED**, and this case is **DISMISSED IN ITS
ENTIRETY**.

Date: June 11, 2008

Gary L. Sharpe
U.S. District Judge

28